# Illinois Official Reports

## Appellate Court

*People v. Shaw*, 2014 IL App (4th) 121157

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVEY R. SHAW, JR., Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-12-1157 |
| Filed | November 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for possession of cocaine, possession of cannabis, and resisting or obstructing a peace officer were remanded for a sufficient *Batson* hearing, and the appellate court would retain jurisdiction to review the trial court's ruling on remand and to review the remaining issues raised by defendant in his appeal with supplemental briefs from the parties with respect to any issues arising from the hearing on remand. |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 09-CF-393; the Hon. Nancy S. Fahey, Judge, presiding. |
| Judgment | Remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Duane E. Schuster, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, David J. Robinson, and Aimee Sipes Johnson, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion. Justices Holder White and Steigmann concurred in the judgment and opinion. |
|-------|---------|

**OPINION**

¶ 1     In August 2009, the State charged defendant, Davey R. Shaw, Jr., with possession of a controlled substance (cocaine) (count I) (720 ILCS 570/402(c) (West 2008)), possession of cannabis (count II) (720 ILCS 550/4(a) (West 2008)), and resisting or obstructing a peace officer (count III) (720 ILCS 5/31-1(a) (West 2008)). After an October 2012 trial, a jury found defendant guilty of all three charges. In November 2012, defendant filed a motion for a new trial, which the trial court denied. In December 2012, the trial court sentenced defendant to 5 years' imprisonment for possession of a controlled substance (cocaine), to run concurrently with a 364-day sentence for resisting or obstructing a peace officer and a 30-day sentence for possession of cannabis.

¶ 2     Defendant appeals, arguing the trial court (1) erred in refusing to conduct a *Batson* hearing (*Batson v. Kentucky*, 476 U.S. 79, 89 (1986)); (2) erred in admitting evidence, over objection, and allowing argument that possession of cannabis was a "fine-only" offense; and (3) violated his constitutional right to confront witnesses when it heard witness testimony outside his presence. We agree the trial court failed to conduct a sufficient *Batson* hearing, and we remand with directions.

¶ 3                              I. BACKGROUND

¶ 4     On August 10, 2009, the State charged defendant by information with possession of a controlled substance (cocaine), a Class 4 felony (count I) (720 ILCS 570/402(c) (West 2008)); possession of cannabis, a Class C misdemeanor (count II) (720 ILCS 550/4(a) (West 2008)); and resisting or obstructing a peace officer, a Class A misdemeanor (count III) (720 ILCS 5/31-1(a) (West 2008)).

¶ 5     Defendant's first jury trial ended in a mistrial. His second jury trial commenced on October 17, 2012. Because we remand for further proceedings on defendant's *Batson* challenges, we discuss only those facts related to the issue of alleged discrimination in the selection of the jury.

¶ 6                              A. *Voir Dire*

¶ 7     The jury venire in this case consisted of 28 potential jurors, which the trial court divided into two groups of 14 venire members. No *Batson* issue was raised during consideration of the first panel of 14 potential jurors. In the second panel of potential jurors, the State used peremptory challenges on two African-American venire members and defendant raised respective *Batson* objections. The record establishes defendant is African-American.

¶ 8     Defendant raised his first *Batson* objection when the State sought to use a peremptory challenge on Esther Bynum. The following colloquy occurred:

"[PROSECUTOR]: We'd ask to excuse Miss Bynum.

[DEFENSE COUNSEL]: Your Honor, at this time I would like to raise a [*Batson*] issue. Miss Bynum is the only black on this panel so far. She is a member of a cognizable racial group. The Prosecutor has used its [*sic*] peremptory challenge to remove that venire member from the jury, and there are no facts or other relevant circumstances that would raise an inference that this was anything other than for race.

THE COURT: Mr. [Prosecutor].

[PROSECUTOR]: That's actually–I don't think this is the correct procedure. You have to show a pattern with regard to the State.

But with regard to Miss Bynum, the Court asked her if she could sign a guilty verdict, and she hesitated and had the Court basically re[-]ask the question. That was one of the reasons.

But I don't believe this is a proper inquiry under the nature of the case law at this point. There has to be a pattern shown with regard to the State kicking off jurors with regard to race.

[DEFENSE COUNSEL]: Your Honor, it would be difficult to establish a pattern where she is the only one to this point. Every other member of the jury to this point has been white. She is the first black person that we've reached.

THE COURT: The Court has determined that the Defendant has not established a pattern under *Batson*."

Accordingly, the court excused Bynum from the venire.

¶ 9    Defendant raised his second *Batson* objection when the State sought to use a peremptory challenge on Jacqueline Smith–the first person considered for alternate juror. The State had failed in its earlier attempt to remove Smith for cause. Regarding the State's use of a peremptory challenge on Smith, the following colloquy occurred:

"[PROSECUTOR]: Okay. The State would use [its last] challenge with regard to Miss Smith as we did before on cause.

[DEFENSE COUNSEL]: Your Honor, again I would raise a *Batson* issue. She is the second black person in this venire. Every single other person has been white. The State has now exercised peremptories against both blacks, and I would suggest that we now have a pattern.

[PROSECUTOR]: And if it helps, we'll accept Miss Williams.

THE COURT: Well, on the issue of Miss Smith, I don't think a pattern has been shown. There was an original motion to remove Miss Smith for cause because of her relationship with Mr. Shaw's family, and I denied the motion for cause. But I do not feel that there has been established a pattern with either Miss Bynum or Miss Smith."

Accordingly, the trial court excused Smith from the venire. Thereafter, Natalie Williams, the third African-American in the venire, was accepted as the alternate juror.

¶ 10                              B. Posttrial Proceedings

¶ 11    On November 9, 2012, defendant filed a motion for a new trial, asserting in relevant part that the trial court erred by (1) denying his request for a *Batson* hearing and (2) allowing testimony regarding possession of cannabis being a "fine-only" offense. Following a

November 28, 2012, hearing on defendant's motion, the trial court took the matter under advisement. In a November 29, 2012, docket entry, the trial court denied defendant's motion for a new trial.

¶ 12 On December 17, 2012, the trial court sentenced defendant to 5 years' imprisonment for possession of a controlled substance (cocaine), to run concurrently with a 364-day sentence for resisting or obstructing a peace officer and a 30-day sentence for possession of cannabis.

¶ 13 This appeal followed.

¶ 14                                   II. ANALYSIS

¶ 15 On appeal, defendant asserts the trial court (1) erred in refusing to conduct a *Batson* hearing; (2) erred in admitting evidence and allowing argument that possession of cannabis was a "fine-only" offense; and (3) violated his constitutional right to confront witnesses when it heard witness testimony outside his presence.

¶ 16                          A. The Three-Step *Batson* Procedure

¶ 17 In *Batson*, the United States Supreme Court held "the Equal Protection Clause [of the United States Constitution (U.S. Const., amend. XIV, § 1)] forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson*, 476 U.S. at 89. Accordingly, the *Batson* Court established a three-step process to evaluate claims of alleged discrimination during jury selection.

¶ 18 During the first step of a *Batson* hearing, "the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race." *People v. Davis*, 231 Ill. 2d 349, 360, 899 N.E.2d 238, 245 (2008). "[T]he threshold for making out a *prima facie* claim under *Batson* is not high: 'a defendant satisfies the requirements of *Batson*'s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.' " *Id*. (quoting *Johnson v. California*, 545 U.S. 162, 170 (2005)). In determining whether the person alleging discrimination has established a *prima facie* case, the trial court "must consider 'the totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike to see if they give rise to a discriminatory purpose." *Id*. (quoting *Batson*, 476 U.S. at 94, 96-97). The relevant factors the court should consider include the following:

> " '(1) racial identity between the [party exercising the peremptory challenge] and the excluded venirepersons; (2) a pattern of strikes against African-American venirepersons; (3) a disproportionate use of peremptory challenges against African-American venirepersons; (4) the level of African-American representation in the venire as compared to the jury; (5) the prosecutor's questions and statements [of the challenging party] during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogenous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses.' " *People v. Rivera*, 221 Ill. 2d 481, 501, 852 N.E.2d 771, 783-84 (2006) (quoting *People v. Williams*, 173 Ill. 2d 48, 71, 670 N.E.2d 638, 650 (1996)).

In addition, a "comparative juror analysis" is another factor for the court to take into consideration in determining the existence of a *prima facie* case. *Davis*, 231 Ill. 2d at 362, 899 N.E.2d at 246. A comparative juror analysis examines " ' a prosecutor's questions to prospective jurors and the jurors' responses, to see whether the prosecutor treated otherwise similar jurors differently because of their membership in a particular group.' " *Id*. at 361, 899 N.E.2d at 245-46 (quoting *Boyd v. Newland*, 467 F.3d 1139, 1145 (9th Cir. 2004)). If the trial court–after considering "the totality of all the relevant facts and circumstances to determine whether they give rise to an inference of discriminatory purpose"–concludes the defendant established a *prima facie* case of discrimination in the selection of the jury, the court proceeds to the next step. *Id*. at 362, 899 N.E.2d at 246.

¶ 19    During the second step of the *Batson* hearing, the focus shifts to the prosecutor, who must articulate a race-neutral reason for striking the juror. *Id*. at 362-63, 899 N.E.2d at 246. Once the prosecutor establishes a race-neutral reason for striking the juror, the defendant may rebut the proffered reason as pretextual. *Id*. at 363, 899 N.E.2d at 247.

¶ 20    Finally, during the third step of the *Batson* hearing, "the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions." *Id.* During this step, the court "must evaluate not only whether the prosecutor's demeanor belies discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id*. at 364, 899 N.E.2d at 247.

¶ 21                              B. Defendant's *Batson* Objections

¶ 22    In this case, defendant raised *Batson* objections immediately following the State's peremptory challenges of two venire members, both of whom were African-American.

¶ 23                              1. *Defendant's First Batson Objection*

¶ 24    Defendant made his first *Batson* objection after the State exercised a peremptory challenge on Bynum, arguing, "there are no facts or other relevant circumstances that would raise an inference that this was anything other than for race." Immediately thereafter, the trial court addressed the prosecutor, evidently seeking his input on the matter. The prosecutor responded, "I don't think this is the correct procedure. You have to show a pattern with regard to the State. *** There has to be a pattern shown with regard to the State kicking off jurors with regard to race." The prosecutor, nevertheless, asserted his reason for dismissing Bynum was due to her "hesitation" in answering a specific question during *voir dire*. Defendant countered that it would be impossible to show a pattern where Bynum was the first African-American venire member to be considered. Without further elaboration by either party, the court excused Bynum from the venire, concluding only "that the Defendant has not established a pattern under *Batson*."

¶ 25    Initially, we note that while evidence of a pattern of discriminatory strikes is one factor a court should consider when determining whether the party challenging the peremptory strike has established a *prima facie* case under *Batson*, it is not a dispositive factor. See *People v. Blackwell*, 164 Ill. 2d 67, 75, 646 N.E.2d 610, 614 (1995) ("A pattern of strikes is a factor this court will consider in evaluating a *Batson* claim but is not dispositive."); *People v. Davis*, 345 Ill. App. 3d 901, 910, 803 N.E.2d 514, 522 (2004) ("If the absence of a 'pattern of strikes' were

enough, in and of itself, to defeat the establishment of a *prima facie* case of discrimination under *Batson*, this would effectively enable a prosecutor to exercise at least one peremptory challenge in a discriminatory manner. Such a possibility is untenable in light of the fact that pursuant to *Batson* and its progeny, the exclusion of just one venireperson on account of race is unconstitutional and requires reversal of the conviction.").

¶ 26    Based on the record before us, it is unclear whether the trial court found defendant established a *prima facie* case of discrimination in regard to Bynum. Although it appears the proceedings drifted into the second stage of the *Batson* analysis, where the State offered a race-neutral reason for excusing Bynum (see *Davis*, 231 Ill. 2d at 362-63, 899 N.E.2d at 246 (input from the State is not relevant until after a court has concluded the defendant established a *prima facie* case of discrimination)), other than commenting on a lack of a pattern demonstrated, the trial court did not address any of the other factors to be considered in ascertaining whether a defendant has established a *prima facie* case of discrimination. Instead of proceeding methodically through the required three-step *Batson* procedure, it appears the trial court collapsed the first and second steps into a single inquiry, which was incorrect. See *Rivera*, 221 Ill. 2d at 500-01, 852 N.E.2d at 783 ("[T]his court has repeatedly cautioned that the first and second steps in the process 'should not be collapsed into a single, unitary disposition that dilutes the distinctions between a *** *prima facie* showing of discrimination and the *** production of neutral explanations for its peremptory challenges.' " (quoting *People v. Wiley*, 156 Ill. 2d 464, 475, 622 N.E.2d 766, 771 (1993))). The court here should have completed the first step of the analysis and determined whether or not a *prima facie* case of discrimination had been established before proceeding to the second step. Instead, the record indicates the court denied defendant's *Batson* challenge as to Bynum based on defendant's failure to establish a pattern of discrimination in the selection of the jury by the State, which, as mentioned above, is only one of several factors a court should consider when determining whether a defendant has established a *prima facie* case of discrimination at the first stage.

¶ 27                              2. *Defendant's Second Batson Objection*

¶ 28    Defendant made his second *Batson* objection after the State exercised a peremptory challenge on Smith. Upon raising this *Batson* objection, defendant asserted, "[t]he State has now exercised peremptories against both blacks, and I would suggest that we now have a pattern." Without seeking input from the State, the trial court referred to the State's earlier attempt to remove Smith for cause and then excused her from the venire, concluding, "I do not feel that there has been established a pattern with either Miss Bynum or Miss Smith."

¶ 29    Based on the record before us, we are unable to determine which, if any, of the *Batson* steps the trial court undertook regarding defendant's objection to the State's peremptory challenge of Smith. We further note the court's docket-entry denial of defendant's motion for a new trial does not provide additional evidence to assist this court in making a reasoned determination regarding the court's intentions or rationale for denying either of defendant's *Batson* objections.

¶ 30    *Batson* and its progeny have established a clear three-step process that trial courts must follow when evaluating a claim of discrimination during jury selection. That procedure was not followed here and, as a result, the record is insufficient for us to conduct a meaningful review of defendant's *Batson* challenges. Thus, we find it necessary to remand to the trial court

for the limited purpose of conducting a full *Batson* hearing concerning the State's peremptory challenges of Bynum and Smith.

¶ 31                           C. *Batson* Hearing on Remand

¶ 32    In an effort to provide guidance to the trial court, we recommend it follow the procedure set forth below when it conducts the *Batson* hearing on remand. We believe a step-by-step, methodical approach will aid the circuit court in conducting this and future *Batson* hearings.

¶ 33    During the first step of the *Batson* hearing on remand, defendant should be given an opportunity to fully address his *Batson* challenges as to Bynum and Smith. The trial court shall then determine, based on the seven factors in *Rivera*, as discussed above (here, given that the prosecutor did not pose questions to either Bynum or Smith during *voir dire*, a comparative juror analysis is unnecessary), whether defendant has succeeded or failed in establishing a *prima facie* case as to both excluded jurors, and it shall make findings in this regard and articulate the basis of its findings. Defendant may call his defense counsel along with Bynum and Smith to testify at the hearing if he wishes. *People v. Andrews*, 132 Ill. 2d 451, 462-63, 548 N.E.2d 1025, 1030 (1989). The trial court may consider, in addition to the evidence and argument presented by defendant, any notes it may have made contemporaneous to *voir dire* or recollections of observations it may have made of Bynum and Smith. *Id*. at 463, 548 N.E.2d at 1030.

¶ 34    If the trial court finds defendant has failed to establish a *prima facie* case of purposeful discrimination, the *Batson* hearing is concluded. However, if the court finds a *prima facie* showing has been made, the hearing will proceed to the second step, where the burden shifts to the State to come forward with a race-neutral explanation for challenging the juror(s). As stated in *Batson*, in articulating that explanation, "the prosecutor must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges." *Batson*, 476 U.S. at 98 n.20 (quoting *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981)). The State may advance not only explanations it made contemporaneous to the trial proceedings, but may also advance any further explanations regardless of the subsequent passage of time. *People v. Hope*, 137 Ill. 2d 430, 467, 560 N.E.2d 849, 866 (1990). We note that prosecutors are not subject to cross-examination or testifying under oath at *Batson* hearings. *People v. Harris*, 129 Ill. 2d 123, 174, 544 N.E.2d 357, 379 (1989). Thereafter, the defendant should be allowed to respond and present any argument that the State's proffered explanation is pretextual.

¶ 35    Assuming the State has advanced a race-neutral explanation, the *Batson* hearing then proceeds to the third step. During the third step, the trial court must determine whether defendant has established purposeful discrimination in light of the parties' submissions. At this point, the court must make credibility findings. In noting the pivotal role of the trial court at this stage, the Supreme Court in S*nyder v. Louisiana*, 552 U.S. 472, 477 (2008), stated as follows:

> "Step three of the *Batson* inquiry involves an evaluation of the prosecutor's credibility [citation], and the 'best evidence [of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge,' [citation]. In addition, race-neutral reasons for peremptory challenges often invoke a juror's demeanor (*e.g.*, nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's

demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor."

We understand that it may be difficult for the court in this case to make such credibility determinations and recall its observations of an individual's demeanor given the considerable passage of time. See *Davis*, 231 Ill. 2d at 368, 899 N.E.2d at 249-50 ("We realize that determinations of credibility and demeanor (*e.g.*, facial expressions and the inflection and tone of voice when answering questions) may be extremely difficult on remand, which will now be more than four years after the trial."). However, it is important that the trial court do so if possible and articulate its credibility findings and conclusions of law in order to allow for meaningful appellate review.

¶ 36    Because we remand for a *Batson* hearing, we withhold disposition of the remaining issues on appeal. See *Davis*, 231 Ill. 2d at 370, 899 N.E.2d at 250 (disposition of remaining issues on appeal to be announced after the *Batson* proceedings on remand). The trial court shall file its findings of fact and conclusions of law with the clerk of this court within 60 days of its decision, accompanied by the record of the proceedings on remand. *Id.*; *People v. Martinez*, 317 Ill. App. 3d 1040, 1046, 740 N.E.2d 1185, 1190 (2000). We retain jurisdiction to review the court's ruling after remand and to address the remaining issues raised by defendant in this appeal. Defendant and the State will be allowed to submit supplemental briefs in this court addressing any issues which arise from the *Batson* hearing on remand. See *Davis*, 345 Ill. App. at 912, 803 N.E.2d at 523.

¶ 37                                    III. CONCLUSION

¶ 38    For the reasons stated, we remand this cause to the circuit court of Vermilion County for proceedings consistent with this opinion.

¶ 39    Remanded with directions.