# Illinois Official Reports

## Appellate Court

---

### *People v. Trejo*, 2021 IL App (2d) 190424

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARMANDO TREJO JR., Defendant-Appellant. |
| District & No. | Second District<br>No. 2-19-0424 |
| Filed | September 27, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-CF-3045; the Hon. James K. Booras, Judge, presiding. |
| Judgment | Remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Christopher McCoy, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Miles J. Keleher, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.<br>Justices McLaren and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a jury trial in the circuit court of Lake County, defendant, Armando Trejo Jr., was convicted of two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)) in connection with the deaths of his wife, Leilani Trejo, and her son, P.U., and was sentenced to life imprisonment. During jury selection, defendant objected, under *Batson v. Kentucky*, 476 U.S. 79 (1986), when the State used peremptory challenges against Hispanic prospective jurors. The trial court denied the objections. Defendant argues on appeal that the trial court did not conduct a proper *Batson* hearing and that the case must be remanded for that purpose. We agree and enter a limited remand.

¶ 2 **I. BACKGROUND**

¶ 3 At jury selection, the State used peremptory challenges against four prospective jurors. When the State made its fourth challenge—to prospective juror number 493—defense counsel objected that the State made three challenges (including that one) against Hispanic prospective jurors. The trial court inquired whether defendant was making a *Batson* challenge based on "ethnicity" or "minority." Defense counsel responded that he wanted to make a record. At that point, the prosecutor argued that defendant had not made a *prima facie* case of discrimination. The trial court inquired of the State, "Is there an ethnicity or background or race neutral answer that you have to your challenge?" The State noted that the prospective juror had indicated that he had been the victim of domestic violence by his ex-wife. The trial court indicated that it accepted the State's explanation, and it overruled the objection to the peremptory challenge. In doing so, the trial court noted that three Hispanic jurors had already been seated.

¶ 4 Defendant then mentioned two prior Hispanic prospective jurors against whom the State had already used peremptory challenges. The trial court responded that there were no objections to those peremptory challenges; therefore, it could not "go back" and "establish the reasons" for those challenges. The trial court further stated, "The *Batson* challenge has no grounds whatsoever here. I have not seen it. Okay? It has to be a pattern. It has to be systematic. It hasn't been. And there was no objection because obviously [the defense] thought it was a good reason for the excuse."

¶ 5 After the jury found defendant guilty, he filed a motion for a new trial, arguing, *inter alia*, that the trial court failed to conduct a proper *Batson* hearing. At the hearing on the motion for a new trial, the State offered its reasons for its first two challenges to Hispanic prospective jurors. The State challenged one of them because he had a conviction of a crime of violence and had trouble reading English. The State challenged the other prospective juror because a family member had molested her as a child. The trial court denied the motion, observing that three Hispanic individuals were seated on the jury. The court added, "And to say that there was a systematic method of excusing at least Hispanic jurors, I think it's preposterous under the circumstances."

¶ 6 **II. ANALYSIS**

¶ 7 Under the equal protection clause of the fourteenth amendment, the State is forbidden from using peremptory challenges to exclude potential jury members based on race or gender. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 65. In *Batson*, the United States Supreme

Court developed a three-step process for evaluating claims of racial discrimination in the exercise of peremptory challenges. First, the defendant must make a *prima facie* case that the State exercised a peremptory challenge based on race. *People v. Payne*, 2015 IL App (2d) 120856, ¶ 42.

> "Among the circumstances deemed 'relevant' in establishing a *prima facie* case are: (1) racial identity between the objecting party and the excluded venireperson; (2) a pattern of strikes against minority venirepersons; (3) the disproportionate use of peremptory challenges against minority venirepersons; (4) evidence of the minority representation in the venire as a whole compared to the selected jury; (5) the nonobjecting party's questions and statements during *voir dire* and while exercising peremptory challenges; (6) whether excluded venirepersons were a heterogenous group sharing race as their only common characteristic; and (7) the race of the objecting party, the victim, and the witnesses at trial." *Id.*

¶ 8 If the defendant makes a *prima facie* case, the hearing proceeds to the second step, where the State must articulate a race-neutral explanation for the peremptory challenges. *Id.* ¶ 43. The second step focuses on the facial validity of the explanation, which "need not be persuasive or even plausible." *Id.* Then, the defendant is allowed to rebut the State's reasons as being pretextual. *Id.* At the third step, "the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions." *People v. Davis*, 231 Ill. 2d 349, 363 (2008). During the third step, the court "must evaluate not only whether the prosecutor's demeanor belies discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id.* at 364. Generally, we cannot overturn a trial court's ultimate conclusion on a *Batson* claim unless it is clearly erroneous. *Id.*

¶ 9 Defendant argues that the trial court failed to adhere to this procedure in several ways. First, the trial court refused to consider defendant's *Batson* objection to the first two Hispanic prospective jurors against whom the State used peremptory challenges. The trial court indicated that defendant could not "go back" to previously dismissed jurors. On the contrary, as defendant points out, the dismissal of peremptorily challenged jurors does not foreclose a *Batson* objection, so long as the jury has not been sworn. *People v. Ross*, 329 Ill. App. 3d 872, 880-81 (2002). Thus, the trial court should have considered *Batson* objections to all three challenged Hispanic prospective jurors, even though two had already been excused from service.

¶ 10 Second, without making any finding whether defendant made a *prima facie* case, the trial court asked the State for a race-neutral explanation for its third peremptory challenge to a Hispanic prospective juror. Thus, the trial court essentially collapsed the first and second steps of the *Batson* process into a single step. Illinois courts have consistently disapproved of that practice. *People v. Shaw*, 2014 IL App (4th) 121157, ¶ 26.

¶ 11 In *Shaw*, the State used peremptory challenges against African American prospective jurors Esther Bynum and Jaqueline Smith. When the State challenged Bynum, the defendant objected under *Batson*, arguing that " 'there are no facts or other relevant circumstances that would raise an inference that [the peremptory challenge] was anything other than for race.' " The State responded that defendant was required to establish a pattern of " 'the State kicking off jurors with regard to race.' " *Id.* The State also indicated that it challenged Bynum because she had hesitated when asked if she could sign a guilty verdict. The trial court allowed the peremptory

challenge, reasoning that the defendant had not established a pattern under *Batson*. When the State challenged Smith, defendant stated, " '[t]he State has now exercised peremptories against both blacks, and I would suggest that we now have a pattern.' " *Id.* ¶ 28. The trial court excused Smith without seeking input from the State. The trial court stated, " 'I do not feel that there has been established a pattern with either Miss Bynum or Miss Smith.' " *Id.*

¶ 12 The *Shaw* court remanded for a new *Batson* hearing. The court noted that, although a pattern of discriminatory peremptory challenges is a *factor* in determining whether a defendant has made a *prima facie* case under *Batson*, it is not dispositive. *Id.* ¶ 25. The court also observed that it was unclear whether the trial court had found a *prima facie* case concerning Bynum:

> "Although it appears the proceedings drifted into the second stage of the *Batson* analysis, where the State offered a race-neutral reason for excusing Bynum [citation], other than commenting on a lack of a pattern demonstrated, the trial court did not address any of the other factors to be considered in ascertaining whether a defendant has established a *prima facie* case of discrimination. Instead of proceeding methodically through the required three-step *Batson* procedure, it appears the trial court collapsed the first and second steps into a single inquiry, which was incorrect. [Citation.] The court here should have completed the first step of the analysis and determined whether or not a *prima facie* case of discrimination had been established before proceeding to the second step. Instead, the record indicates the court denied defendant's *Batson* challenge as to Bynum based on defendant's failure to establish a pattern of discrimination in the selection of the jury by the State, which *** is only one of several factors a court should consider when determining whether a defendant has established a *prima facie* case of discrimination at the first stage." *Id.* ¶ 26.

Concerning Smith, the *Shaw* court held that it was unclear from the record "which, if any, of the *Batson* steps the trial court undertook regarding defendant's objection to the State's peremptory challenge." *Id.* ¶ 29. The *Shaw* court held that, because of the procedural irregularities, the record was insufficient to facilitate meaningful appellate review of the defendant's *Batson* objection.

¶ 13 We likewise find the record here insufficient to facilitate meaningful review of defendant's *Batson* objection. It does not appear that the trial court properly considered whether the defendant had established a *prima facie* case. Rather, the court focused improperly on the single factor of whether there was a pattern of discrimination. As discussed in *Shaw*, proof of a *Batson* violation does not invariably depend on the existence of a pattern of discrimination. The State argues that the trial court mentioned the lack of a pattern only because defendant's *Batson* theory was based on the exclusion of three Hispanic prospective jurors. On the contrary, the trial court's remark that there "*has* to be a pattern. It *has* to be systematic" (emphases added) appears to betray the trial court's fundamental misconception about what must be shown under *Batson*.

¶ 14 Furthermore, after the State offered its explanation regarding prospective juror number 493's experience with domestic violence, the trial court allowed the peremptory challenge without giving defendant the opportunity to rebut the State's explanation. Thus, the court improperly conducted the third step of the *Batson* process.

¶ 15 The State attempts to defend the trial court's decision on the merits, arguing that (1) defendant failed to make a *prima facie* case of discrimination in the use of peremptory

challenges, (2) the State asserted race-neutral explanations for the peremptory challenges, and (3) the trial court's finding of no *Batson* violation was not clearly erroneous. Defendant responds, in essence, that whether the record supports the trial court's decision is beside the point because the record was not developed per the necessary procedures for resolving *Batson* objections. We agree. Furthermore, the trial court erred by categorically refusing to consider defendant's *Batson* objection to the peremptory strikes of the first two Hispanic prospective jurors.

¶ 16 The State contends that even assuming that the trial court collapsed the *Batson* proceedings into one stage, the error was rendered moot by the court's finding of no purposeful discrimination. See *People v. Austin*, 2017 IL App (1st) 142737, ¶ 41 ("Any error in a trial court's finding of a *prima facie* showing of a *Batson* violation is generally rendered moot by a later finding, as here, that no purposeful discrimination has occurred."). However, that finding was itself procedurally improper because defendant was not offered the opportunity to rebut the State's race-neutral showing.

¶ 17 In view of the procedural irregularities in the conduct of the *Batson* proceedings, we conclude that a remand for a proper *Batson* hearing is necessary. We retain jurisdiction to review the trial court's decision on remand, which it shall support with appropriate findings of fact and conclusions of law. The trial court shall hold a hearing within 30 days of the publication of this opinion. Following the hearing, the trial court shall, within 30 days, file its findings and conclusions with the clerk of this court, accompanied by the record of the proceedings on remand. Then, the parties shall have the opportunity to submit supplemental briefs to this court if they so choose. See *Davis*, 231 Ill. 2d at 370; *Shaw*, 2014 IL App (4th) 121157, ¶ 36.

¶ 18                                                    III. CONCLUSION
¶ 19 For the reasons stated, we remand this cause to the circuit court of Lake County for further proceedings consistent with this opinion.

¶ 20 Remanded.