2022 IL App (2d) 190424-B
No. 2-19-0424
Opinion filed June 22, 2022

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-3045 |
| ARMANDO TREJO JR., | ) ) | Honorable James K. Booras, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices McLaren and Zenoff[1] concurred in the judgment and opinion.

**OPINION**

¶ 1 Following a jury trial in the circuit court of Lake County, defendant, Armando Trejo Jr., was convicted of two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)) in connection with the deaths of his wife, Leilani Trejo, and her son, P.U., and was sentenced to life imprisonment. During jury selection, defendant objected, under *Batson v. Kentucky*, 476 U.S. 79

---

[1]Justice Zenoff participated in this appeal, but has since been assigned to the Fourth District Appellate Court. Our supreme court has held that the departure of a judge prior to the filing date will not affect the validity of a decision so long as the remaining two judges concur. *Proctor v. Upjohn Co.*, 175 Ill. 2d 394, 396 (1997).

(1986), when the State used peremptory challenges against Hispanic prospective jurors. The trial court denied the objections. Defendant argues on appeal that the trial court did not conduct a proper *Batson* hearing and that the case must be remanded for that purpose. We agree and enter a limited remand.

¶ 2                                    I. BACKGROUND

¶ 3      At jury selection, the State used peremptory challenges against four prospective jurors. When the State made its fourth challenge—to prospective juror number 493—defense counsel objected that the State made three challenges (including that one) against Hispanic prospective jurors. The trial court inquired whether defendant was making a *Batson* challenge based on "ethnicity" or "minority." Defense counsel responded that he wanted to make a record. At that point, the prosecutor argued that defendant had not made a *prima facie* case of discrimination. The trial court inquired of the State, "Is there an ethnicity or background or race neutral answer that you have to your challenge?" The State noted that the prospective juror had indicated that he had been the victim of domestic violence by his ex-wife. The trial court indicated that it accepted the State's explanation, and it overruled the objection to the peremptory challenge. In doing so, the trial court noted that three Hispanic jurors had already been seated.

¶ 4      Defendant then mentioned two prior Hispanic prospective jurors against whom the State had already used peremptory challenges. The trial court responded that there were no objections to those peremptory challenges; therefore, it could not "go back" and "establish the reasons" for those challenges. The trial court further stated, "The *Batson* challenge has no grounds whatsoever here. I have not seen it. Okay? It has to be a pattern. It has to be systematic. It hasn't been. And there was no objection because obviously [the defense] thought it was a good reason for the excuse."

¶ 5     After the jury found defendant guilty, he filed a motion for a new trial, arguing, *inter alia*, that the trial court failed to conduct a proper *Batson* hearing. At the hearing on the motion for a new trial, the State offered its reasons for its first two challenges to Hispanic prospective jurors. The State challenged one of them because he had a conviction of a crime of violence and had trouble reading English. The State challenged the other prospective juror because a family member had molested her as a child. The trial court denied the motion, observing that three Hispanic individuals were seated on the jury. The court added, "And to say that there was a systematic method of excusing at least Hispanic jurors, I think it's preposterous under the circumstances."

¶ 6                                    II. ANALYSIS

¶ 7     Under the equal protection clause of the fourteenth amendment, the State is forbidden from using peremptory challenges to exclude potential jury members based on race or gender. *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 65. In *Batson*, the United States Supreme Court developed a three-step process for evaluating claims of racial discrimination in the exercise of peremptory challenges. First, the defendant must make a *prima facie* case that the State exercised a peremptory challenge based on race. *People v. Payne*, 2015 IL App (2d) 120856, ¶ 42.

> "Among the circumstances deemed 'relevant' in establishing a *prima facie* case are: (1) racial identity between the objecting party and the excluded venireperson; (2) a pattern of strikes against minority venirepersons; (3) the disproportionate use of peremptory challenges against minority venirepersons; (4) evidence of the minority representation in the venire as a whole compared to the selected jury; (5) the nonobjecting party's questions and statements during *voir dire* and while exercising peremptory challenges; (6) whether excluded venirepersons were a heterogenous group sharing race as

their only common characteristic; and (7) the race of the objecting party, the victim, and the witnesses at trial." *Id.*

¶ 8    If the defendant makes a *prima facie* case, the hearing proceeds to the second step, where the State must articulate a race-neutral explanation for the peremptory challenges. *Id.* ¶ 43. The second step focuses on the facial validity of the explanation, which "need not be persuasive or even plausible." *Id.* Then, the defendant is allowed to rebut the State's reasons as being pretextual. *Id.* At the third step, "the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions." *People v. Davis*, 231 Ill. 2d 349, 363 (2008). During the third step, the court "must evaluate not only whether the prosecutor's demeanor belies discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Id.* at 364. Generally, we cannot overturn a trial court's ultimate conclusion on a *Batson* claim unless it is clearly erroneous. *Id.*

¶ 9    Defendant argues that the trial court failed to adhere to this procedure in several ways. First, the trial court refused to consider defendant's *Batson* objection to the first two Hispanic prospective jurors against whom the State used peremptory challenges. The trial court indicated that defendant could not "go back" to previously dismissed jurors. On the contrary, as defendant points out, the dismissal of peremptorily challenged jurors does not foreclose a *Batson* objection, so long as the jury has not been sworn. *People v. Ross*, 329 Ill. App. 3d 872, 880-81 (2002). Thus, the trial court should have considered *Batson* objections to all three challenged Hispanic prospective jurors, even though two had already been excused from service.

¶ 10    Second, without making any finding whether defendant made a *prima facie* case, the trial court asked the State for a race-neutral explanation for its third peremptory challenge to a Hispanic prospective juror. Thus, the trial court essentially collapsed the first and second steps of the *Batson*

process into a single step. Illinois courts have consistently disapproved of that practice. *People v. Shaw*, 2014 IL App (4th) 121157, ¶ 26.

¶ 11    In *Shaw*, the State used peremptory challenges against African American prospective jurors Esther Bynum and Jaqueline Smith. *Id.* ¶¶ 8-9. When the State challenged Bynum, the defendant objected under *Batson*, arguing that " 'there are no facts or other relevant circumstances that would raise an inference that [the peremptory challenge] was anything other than for race.' " *Id.* ¶ 24. The State responded that defendant was required to establish a pattern of " 'the State kicking off jurors with regard to race.' " *Id.* The State also indicated that it challenged Bynum because she had hesitated when asked if she could sign a guilty verdict. The trial court allowed the peremptory challenge, reasoning that the defendant had not established a pattern under *Batson*. When the State challenged Smith, defendant stated, " '[t]he State has now exercised peremptories against both blacks, and I would suggest that we now have a pattern.' " *Id.* ¶ 28. The trial court excused Smith without seeking input from the State. The trial court stated, " 'I do not feel that there has been established a pattern with either Miss Bynum or Miss Smith.' " *Id.*

¶ 12    The *Shaw* court remanded for a new *Batson* hearing. The court noted that, although a pattern of discriminatory peremptory challenges is a *factor* in determining whether a defendant has made a *prima facie* case under *Batson*, it is not dispositive. *Id.* ¶ 25. The court also observed that it was unclear whether the trial court had found a *prima facie* case concerning Bynum:

> "Although it appears the proceedings drifted into the second stage of the *Batson* analysis, where the State offered a race-neutral reason for excusing Bynum [citation], other than commenting on a lack of a pattern demonstrated, the trial court did not address any of the other factors to be considered in ascertaining whether a defendant has established a *prima facie* case of discrimination. Instead of proceeding methodically through the

required three-step *Batson* procedure, it appears the trial court collapsed the first and second steps into a single inquiry, which was incorrect. [Citation.] The court here should have completed the first step of the analysis and determined whether or not a *prima facie* case of discrimination had been established before proceeding to the second step. Instead, the record indicates the court denied defendant's *Batson* challenge as to Bynum based on defendant's failure to establish a pattern of discrimination in the selection of the jury by the State, which *** is only one of several factors a court should consider when determining whether a defendant has established a *prima facie* case of discrimination at the first stage." *Id.* ¶ 26.

Concerning Smith, the *Shaw* court held that it was unclear from the record "which, if any, of the *Batson* steps the trial court undertook regarding defendant's objection to the State's peremptory challenge." *Id.* ¶ 29. The *Shaw* court held that, because of the procedural irregularities, the record was insufficient to facilitate meaningful appellate review of the defendant's *Batson* objection.

¶ 13    We likewise find the record here insufficient to facilitate meaningful review of defendant's *Batson* objection. It does not appear that the trial court properly considered whether the defendant had established a *prima facie* case. Rather, the court focused improperly on the single factor of whether there was a pattern of discrimination. As discussed in *Shaw*, proof of a *Batson* violation does not invariably depend on the existence of a pattern of discrimination. The State argues that the trial court mentioned the lack of a pattern only because defendant's *Batson* theory was based on the exclusion of three Hispanic prospective jurors. On the contrary, the trial court's remark that there "*has* to be a pattern. It *has* to be systematic" (emphases added) appears to betray the trial court's fundamental misconception about what must be shown under *Batson*.

¶ 14    Furthermore, after the State offered its explanation regarding prospective juror number 493's experience with domestic violence, the trial court allowed the peremptory challenge without giving defendant the opportunity to rebut the State's explanation. Thus, the court improperly conducted the third step of the *Batson* process.

¶ 15    The State attempts to defend the trial court's decision on the merits, arguing that (1) defendant failed to make a *prima facie* case of discrimination in the use of peremptory challenges, (2) the State asserted race-neutral explanations for the peremptory challenges, and (3) the trial court's finding of no *Batson* violation was not clearly erroneous. Defendant responds, in essence, that whether the record supports the trial court's decision is beside the point because the record was not developed per the necessary procedures for resolving *Batson* objections. We agree. Furthermore, the trial court erred by categorically refusing to consider defendant's *Batson* objection to the peremptory strikes of the first two Hispanic prospective jurors.

¶ 16    The State contends that even assuming that the trial court collapsed the *Batson* proceedings into one stage, the error was rendered moot by the court's finding of no purposeful discrimination. See *People v. Austin*, 2017 IL App (1st) 142737, ¶ 41 ("Any error in a trial court's finding of a *prima facie* showing of a *Batson* violation is generally rendered moot by a later finding, as here, that no purposeful discrimination has occurred."). However, that finding was itself procedurally improper because defendant was not offered the opportunity to rebut the State's race-neutral showing.

¶ 17    In view of the procedural irregularities in the conduct of the *Batson* proceedings, we conclude that a remand for a proper *Batson* hearing is necessary. We retain jurisdiction to review the trial court's decision on remand, which it shall support with appropriate findings of fact and conclusions of law. The trial court shall hold a hearing within 30 days of the publication of this

opinion. Following the hearing, the trial court shall, within 30 days, file its findings and conclusions with the clerk of this court, accompanied by the record of the proceedings on remand. Then, the parties shall have the opportunity to submit supplemental briefs to this court if they so choose. See *Davis*, 231 Ill. 2d at 370; *Shaw*, 2014 IL App (4th) 121157, ¶ 36.

¶ 18                                    III. CONCLUSION

¶ 19    For the reasons stated, we remand this cause to the circuit court of Lake County for further proceedings consistent with this opinion.

¶ 20    Remanded.

¶ 21                          **PROCEEDINGS AFTER REMAND**

¶ 22    On remand, the trial court held a hearing and issued its decision within the timeframe we set. We appreciate the court's prompt resolution of this matter.

¶ 23    The court determined that defendant failed to make a *prima facie* showing of purposeful discrimination by the State during *voir dire* against three venirepersons—potential jurors 432, 493, and 558—based on their perceived Hispanic identity. The trial court's finding that defendant failed to meet his initial burden was a factual determination that would stand unless it was clearly erroneous. See *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991) (plurality opinion); *id.* at 372 (O'Connor, J., concurring, joined by Scalia, J.). Defendant, however, does not challenge the trial court's factual findings. Instead, he raises a different issue altogether concerning his legal representation on remand.

¶ 24    During his trial and sentencing, defendant was represented by private counsels Steven Simonian and Michael Ettinger, who worked for the same law firm. On May 20, 2019, after the court sentenced defendant to a term of natural life in prison, attorney Ettinger told the court that defendant was indigent and asked that the Office of the State Appellate Defender (OSAD) be

appointed to represent defendant on appeal. The court granted that request, and defendant filed a notice of appeal.

¶ 25    On September 27, 2021, we issued our order remanding this case, and on September 30, 2021, the parties returned to the trial court. Attorney Simonian was present as the circuit clerk's office had notified him of the remand because he and Ettinger were previously counsels of record. (Ettinger was not present.) Simonian asked the court to be excused, noting that he and Ettinger "had withdrawn and the public defender was appointed" after sentencing. Simonian stated that he would be available as a witness if called and told the court when he would be available. The trial court then stated that we had already granted private counsel leave to withdraw. Because defendant remained indigent, the court appointed Assistant Public Defender (APD) Jason Powell to represent defendant on remand.

¶ 26    On October 13, 2021, APD Powell requested the information sheets that the prospective jurors filled out. The trial court granted that request. On October 22, 2021, the parties returned to court for a status update. APD Powell stated that he "would object to the court allowing the trial attorney[s] to withdraw." He said that he was "at a disadvantage" because he did not personally observe the potential jurors who were stricken and, therefore, had no personal knowledge of what race the potential jurors appeared to be. The trial court explained that it had allowed Ettinger and Simonian to withdraw after sentencing defendant—so the objection was not timely. Furthermore, the court stated that it would not prevent APD Powell from investigating the dismissed venirepersons or conducting interviews of defendant's former counsel. APD Powell lamented that he was left "to engage in stereotyping to attempt to establish who was a member of a particular ethnic group." The court reiterated that it would permit APD Powell to investigate and potentially interview the three stricken venirepersons (and anyone else, for that matter) and would not prevent

him from conducting any line of inquiry. The court stated, however, that it would not grant the defense *carte blanche* and admit all extrinsic evidence but would consider the admissibility of any evidence counsel sought to introduce.

¶ 27 On October 25, 2021, the court held the supplemental *Batson* hearing. Before beginning, APD Powell informed the court that defendant wanted a continuance and time to hire private counsel to represent him. The court noted that it had twice found defendant indigent—when it appointed the appellate defender for his direct appeal, and when it appointed the public defender on remand—and that there was no evidence that defendant's financial status had improved since that time. The court also noted that it set the hearing date when we remanded the case—meaning that defendant had ample time to hire private counsel if he wished. Finally, the court denied the continuance, stating that while it did not find that defendant's request was made exclusively for purposes of delay, it was "suspicio[us]" as to why defendant made the request so late.

¶ 28 Powell then notified the court that the defense had no evidence to present. Powell stated that he did not interview any of the three potential jurors in question because he believed the court had stated off the record that it would not admit that evidence. The trial court judge sharply disagreed with Powell's characterization, noting that while it had concerns about how it could admit future extrinsic evidence, it did not and would never prejudge that question. The trial court pointedly asked, "without knowing what the evidence was, how c[ould] I assure you that I would not admit it?" Powell stated that he understood—that ended the matter.

¶ 29 Powell reiterated throughout the hearing that he had not seen the three venirepersons in question; therefore, he could only speculate about their ethnicities based on their "forenames and surnames." Powell lamented that Ettinger and Simonian made no record of their observations of the venire's racial and ethnic characteristics, stating, "I wish the trial attorneys in this particular

case had made [a] record that would allow us to accomplish this with greater ease and comfort. That was not done, so here we are."

¶ 30    After the hearing, the trial court entered an 11-page memorandum order denying defendant's *Batson* claim. The court found that the defense had failed to make a *prima facie* showing that the State discriminated against Hispanic jurors and further noted that venireperson 558's ethnicity was ambiguous at best and that 558's "surname *** does not allow for the inference of a perceived Hispanic ethnicity." The trial court further observed that it had to construe against defendant as the moving party any ambiguity in venireperson 558's ethnicity. Thus, the State's peremptory challenges to only two Hispanic venirepersons failed to establish even a *prima facie* case for discrimination.

¶ 31    We invited the parties to submit supplemental briefs if they wished, and both have done so. Defendant asserts that the trial court erred when it allowed attorneys Simonian and Ettinger to withdraw, thereby "forcing" APD Powell to conduct a *Batson* hearing about the perceived racial identity of potential jurors that Powell never personally observed. The State responds that there is no authority suggesting, let alone requiring, that a trial court press private attorneys into unpaid legal service on behalf of a former client. Furthermore, as the State points out, any evidentiary gaps in defendant's *Batson* claim remained unfilled only because Powell (and by extension, defendant) neglected to fill them in. We agree with the State.

¶ 32    "Ordinarily, the party asserting a *Batson* claim has the burden of proving a *prima facie* case and preserving the record, and any ambiguities in the record will be construed against that party. [Citations.]" *People v. Davis*, 231 Ill. 2d 349, 365 (2008). Defendant incorrectly asserts that the only way to obtain attorneys Simonian's and Ettinger's views of the perceived ethnicities of the prospective jurors was for Simonian and Ettinger to have been compelled, by court order, to

continue to represent defendant in the limited proceedings on remand. As the State points out, that suggestion is imprudent at best. Generally, a court cannot force a private attorney to represent a client, but like anyone else, they may be accountable to testify under a subpoena.

¶ 33    To the extent defendant's *Batson* claims hinged on Simonian's and Ettinger's observations of the three venirepersons' perceived race, defendant could have easily obtained their observations. As the trial court noted, defendant could have called Simonian or Ettinger as witnesses—or have them submit affidavits—to make known their perceptions of the potential juror's ethnicity. True enough, the trial court did not guarantee to admit Simonian's or Ettinger's testimony—but, by the same token, it did not say that it would exclude their testimony. The court stated that it would carefully evaluate the admissibility of any evidence defendant offered, which was an undoubtedly measured and judicious approach to the situation. But when the defense presented no evidence, it left the trial court (and by extension with us) with little to consider.

¶ 34    In his supplemental reply brief, defendant asserts that we should set aside the ordinary *Batson* presumption noted in *Davis*, 231 Ill. 2d at 365—that ambiguities are construed against the movant—because, according to defendant, "the fault for the deficiencies in the record lies at the feet of the trial judge because he *refused* to allow any discussion regarding venireperson 558." (Emphasis added.) That assertion misrepresents the record and is not well taken. Again, the defense could have sought affidavits, issued subpoenas, or attempted to introduce relevant personally identifying information. Instead, the defense remained silent and now attempts to blame the trial judge for the defense's inaction. We think it is self-evident that the fault lies with the defense, not the trial court. Accordingly, any claim of error is procedurally defaulted because defendant invited any claimed error through his acquiescence and inaction. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). It is axiomatic that a party cannot complain of error that it either induced the court to

make or to which it consented, as it would be "manifestly unfair to allow a party a second trial upon the basis of error which that party injected into the proceedings. [Citations.]" *Id.* Such claims are essentially barred by estoppel, as our supreme court "view[s] cases of acquiescence strictly, finding that a party's 'active participation in the direction of proceedings *** goes beyond mere waiver' such that the traditional exceptions to the waiver rule do not apply." *Id.* at 218 (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)).

¶ 35   Like the State, we have failed to uncover any similar federal or state criminal cases addressing this same problem or even secondary sources considering such inaction in pursuing the remedy for a collapsed *Batson* inquiry. See generally Jason Mazzone, *Batson Remedies*, 97 Iowa L. Rev. 1613 (2012); Emily C. Jeffcott & Mikal C. Watts, *What's Required to Remedy Juror Discrimination? A Brief Discussion on Batson and Its Available Remedies*, 13 Scholar 615 (2011) (The Scholar: St. Mary's Law Review on Race and Social Justice); Cheryl A.C. Brown, *Challenging the Challenge: Twelve Years After Batson, Courts Are Still Struggling to Fill in the Gaps Left by the Supreme Court*, 28 U. Balt. L. Rev. 379 (1999). We take the lack of precedents on this issue as a positive sign. One can imagine the logistical complications that might occur in a post-remand *Batson* hearing to determine a potential juror's perceived ethnicity *years* after excusing potential jurors. (People move, people pass away, etc.) Here, however, defendant's failure to engage with the proceedings on remand obviates those practical concerns. Defendant's inaction leaves his original *Batson* objection unsupported and thus has procedurally defaulted his opportunity to further challenge the trial court's ruling. In addition, after carefully examining the report of proceedings and the trial court's orders following our remand, we found no error.

¶ 36   Affirmed.

**No. 2-19-0424**

| | |
|---|---|
| **Cite as:** | *People v. Trejo*, 2021 IL App (2d) 190424-B |
| **Decision Under Review:** | Appeal from the Circuit Court of Lake County, No. 15-CF-3045; the Hon. James K. Booras, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Christopher McCoy, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Miles J. Keleher, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |