NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210483-U

NO. 4-21-0483

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 18, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Adams County |
| TYWONE D. MITCHELL, | ) | No. 20CF637 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles H. W. Burch, |
| | ) | Judge Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed defendant's conviction of being an armed habitual criminal. Defendant's argument that the trial court deprived him of an opportunity to establish a *prima facie* case of discrimination by improperly collapsing the separate stages of a *Batson* hearing was moot. The trial court's finding that the State gave race-neutral reasons for striking two African American jurors was not clearly erroneous.

¶ 2        Following a jury trial, defendant, Tywone D. Mitchell, was found guilty of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)). The trial court sentenced defendant to 30 years' incarceration in the Illinois Department of Corrections. Defendant appeals, arguing that during jury selection, the trial court improperly conducted a *Batson* hearing and erroneously found he failed to establish a *prima facie* case of discrimination. See *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). We affirm.

¶ 3                              I. BACKGROUND

¶ 4        In November 2020, defendant was charged with being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2018)), unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8 (West 2018)), and unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2018)). The charges arose out of events occurring on October 18, 2020. On that date, defendant shot at a vehicle while he, Tynell Washington, Henry Blackwell Jr., and Monee Briggs were driving around Quincy in Washington's vehicle. Ultimately, the State proceeded against defendant only on the armed habitual criminal charge.

¶ 5        During jury selection, Juror 50 and Juror 18, both of whom were African American women, disclosed that they knew two of the State's possible witnesses: Blackwell and Washington. Juror 50 explained that she had gone to Quincy High School with Blackwell but that Blackwell was not someone with whom she socialized. She further noted that she knew Washington "because of family." She stated that she had never been a guest in either witness's home, and neither witness had been a guest in hers. Juror 50 further stated that she would judge the case and evidence based solely on what was presented in court and that she would be fair.

¶ 6        Juror 18 explained that she dated Blackwell's brother when she was in junior high more than 10 years ago. She was also acquainted with Washington. She noted that neither Blackwell nor Washington had ever been a guest in her home, and she had never been a guest in theirs. She stated that, despite those relationships, she could listen to the evidence and return a verdict based solely on the evidence.

¶ 7        The State used only two peremptory challenges, excusing Juror 50 and Juror 18. The court asked defendant's counsel whether, "[i]nasmuch as the two peremptories that have been exercised by the State are both African-American women," there was "any objection to the excuse via peremptory challenge to those two individuals" pursuant to *Batson*. After conferring

with defendant, counsel responded that he did wish to object. Counsel argued that "the only two blacks on this jury, 10 percent of the panel, have been excused by the State for cause [*sic*] leaving an all white jury and a black defendant."

¶ 8        The court then asked the prosecutor, "do you wish to respond to the objection?" The prosecutor explained that he was concerned about Juror 50 because, first, she knew Blackwell and Washington. The prosecutor explained that, regardless of what Juror 50 thought of Blackwell and Washington, "it's not good" for the case. Second, Juror 50 had a "number of criminal contacts with the police department" stemming from multiple ordinance violations for fighting and stealing. The prosecutor explained that no other jurors "[had] those types of criminal contacts, and if they would have we would have certainly sought to excuse them as well."

¶ 9        As to Juror 18, the prosecutor explained that there were "significant concerns" as to her knowledge of Blackwell and Washington, as that knowledge might "play[ ] a role in her deliberations beyond the evidence that she would hear in this case." The prosecutor also highlighted that Juror 18 dated Blackwell's brother. The prosecutor argued that there were "no other jurors on this panel that knew those two witnesses, and I would tell the Court if there were white jurors who knew those witnesses, we would have the same concerns."

¶ 10        The court allowed defendant's counsel "to have the last word." Counsel argued that, although both jurors knew Blackwell and Washington, they both stated that they could be fair. Thereafter, the court outlined the three-step process mandated under *Batson*. The court noted that it "need[ed] to determine whether the party alleging discriminatory challenges of jurors has met their [*sic*] burden of proving purposeful discrimination." The court then explained:

> "I do not find that that threshold has been crossed. I believe that the reasons that have been given by [the prosecutor] for purposes of exercising his peremptory

challenges to Jurors 50 and 18, that those are race neutral explanations as to why they should be or should have been excused or allowed to be excused by a peremptory challenge. Quite honestly, I don't believe that there has been a *prima facie* case of purposeful discrimination given what has been discussed here even though the two jurors that have been stricken were the only two African-American jurors who were on this group that was assembled for the first stage of jury selection. So the *Baston* [*sic*] claim, such as it is, and the objection that has been made, that will be overruled."

¶ 11 Following the trial, the jury found defendant guilty of being an armed habitual criminal. The court sentenced defendant to 30 years' imprisonment. This appeal followed.

¶ 12 II. ANALYSIS

¶ 13 Defendant argues that the trial court improperly conducted its *Batson* inquiry such that remand for a new *Batson* inquiry is required. Specifically, defendant argues that, although the court was required to conduct a methodical three-step procedure in conducting its *Batson* analysis, the court erroneously collapsed the steps. Defendant further contends that the trial court erroneously found that he failed to establish a *prima facie* case of discrimination.

¶ 14 The equal protection clause of the United States Constitution prohibits a prosecutor from challenging potential jurors solely on account of race on the assumption that black jurors as a group will be unable to impartially consider the prosecutor's case against a black defendant. *People v. Smith*, 236 Ill. App. 3d 812, 814 (1992) (citing *Batson*, 476 U.S. at 89). In *Batson*, the United States Supreme Court established a three-step analysis for determining whether the State used its peremptory challenges to remove potential jurors due to their race. *People v. Easley*, 192 Ill. 2d 307, 323 (2000). Under the first step, a defendant must make a

*prima facie* showing that the prosecutor exercised peremptory challenges on the basis of race. *People v. Shaw*, 2014 IL App (4th) 121157, ¶ 18. To make a *prima facie* showing of discrimination under *Batson*, a defendant must produce evidence sufficient enough for the trial court to draw an inference that discrimination has occurred. *Shaw*, 2014 IL App (4th) 121157, ¶ 18. In determining whether a defendant alleging discrimination has established a *prima facie* case, the trial court must consider the totality of the relevant facts and all relevant circumstances surrounding the peremptory strike to see if they give rise to a discriminatory purpose. *Shaw*, 2014 IL App (4th) 121157, ¶ 18. Courts have found that the following factors should be considered:

> " '(1) racial identity between the [party exercising the peremptory challenge] and the excluded venirepersons; (2) a pattern of strikes against African-American venirepersons; (3) a disproportionate use of peremptory challenges against African-American venirepersons; (4) the level of African-American representation in the venire as compared to the jury; (5) the prosecutor's questions and statements [of the challenging party] during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogenous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses.' " *Shaw*, 2014 IL App (4th) 121157, ¶ 18 (quoting *People v. Rivera*, 221 Ill. 2d 481, 501 (2006)).

A trial court's ruling on the sufficiency of a *prima facie* case of discrimination will not be reversed unless the finding is against the manifest weight of the evidence. *Rivera*, 221 Ill. 2d at 502.

¶ 15        Under the second step, once the trial court concludes that the defendant has established a *prima facie* case of discrimination, the prosecutor must articulate a race-neutral reason for striking the juror. *People v. Harris*, 206 Ill. 2d 1, 17 (2002). A race-neutral explanation is one based upon something other than the venireperson's race. *Harris*, 206 Ill. 2d at 17. The court focuses on the facial validity of the prosecutor's explanation, and that explanation does not need to be persuasive or even plausible. *Harris*, 206 Ill. 2d at 17. Where a party offers more than one explanation for excluding a venireperson, only one explanation must be race-neutral for the exclusion to be valid. *Harris*, 206 Ill. 2d at 17-18. After the prosecutor gives a race-neutral reason for striking the juror, the defendant may rebut the reason as pretextual. *Shaw*, 2014 IL App (4th) 121157, ¶ 19. Importantly, these steps should not be collapsed into a single, unitary disposition that dilutes the distinctions between a *prima facie* showing of discrimination and the production of neutral explanations for the use of peremptory challenges. *Rivera*, 221 Ill. 2d at 500-01.

¶ 16        Under the third step, the court must weigh the evidence in light of the *prima facie* case, the prosecutor's reasons for challenging the venireperson, and any rebuttal by the defendant's counsel to determine whether the defendant met his or her burden of proving unlawful discrimination. *Shaw*, 2014 IL App (4th) 121157, ¶ 20. A trial court's decision as to discriminatory intent is a finding of fact that is entitled to great deference, and it will not be disturbed on appeal unless it is clearly erroneous. *Harris*, 206 Ill. 2d at 17.

¶ 17        Defendant argues that the court improperly collapsed the steps of the *Batson* procedure, thereby depriving him of an opportunity to establish a *prima facie* case of discrimination before hearing the State's explanation for its strikes. He asserts that, by collapsing the inquiry, he was unable to make a complete record by making "full arguments regarding all of

the typical factors" a court must consider in deciding whether a *prima facie* case has been established. Defendant further argues that the court erroneously determined that he failed to show a *prima facie* case of discrimination because the court did not analyze those factors. These arguments are unavailing.

¶ 18 It is true that, "[i]f the State were allowed to interrupt the *prima facie* hearing stage by obtaining judicial consideration of its explanations even though they would be insufficient to overcome an already established *prima facie* case, those explanations would constitute a thumb on the scales that weigh the *prima facie* submission, which would undermine the very concept of a *prima facie* case as outlined in *Batson*." *People v. Garrett*, 139 Ill. 2d 189, 201 (1990). However, once the trial court rules on the ultimate issue of discrimination, the question of whether the defendant established a *prima facie* case becomes moot. *Rivera*, 221 Ill. 2d at 506.

¶ 19 Thus, when the trial court fails to determine whether a *prima facie* case has been made, the State offers its explanation for the peremptory challenge, and the trial court rules on the ultimate issue of intentional discrimination, the issue of whether defendant has made a *prima facie* showing becomes moot. *People v. Kitchen*, 159 Ill. 2d 1, 18 (1994); *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 67; see also *People v. Payne*, 2015 IL App (2d) 120856, ¶ 47 (stating when the trial court "determine[s] that the State had an adequate race-neutral reason for exercising the peremptory challenges," the question of "whether a *prima facie* case was made under *Batson*" becomes moot).

¶ 20 We hold that defendant's arguments fail because the issue of whether defendant established a *prima facie* case of discrimination is moot. We find *Gonzalez* instructive. In *Gonzalez*, the defendant was charged with several sex crimes. *Gonzalez*, 2019 IL App (1st)

152760, ¶ 4. During jury selection, the defendant raised a gender-based *Batson* objection,

arguing that the State used three peremptory challenges against three men, leaving a panel that

"was overwhelming[ly] female." *Gonzalez*, 2019 IL App (1st) 152760, ¶¶ 11-12; see also *People*

*v. Blackwell*, 171 Ill. 2d 338, 348 (1996) ("[W]e apply the *Batson* approach in the context of

gender discrimination."). Before ruling on whether the defendant had established a *prima facie*

case, the court asked the State to respond. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 12. The State

explained that one juror could have a bias against the State because he had been a defendant in a

murder trial, another juror could harbor a bias against women because he had been previously

charged with domestic battery and solicitation of a sex act, and the last juror was a "very young

man" with little life experience. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 12. The court then stated

that it found no basis for a gender-based *Batson* challenge and did not "even find that the first

prong would be met, but the State did provide neutral reasons, even though I didn't require them

to." *Gonzalez*, 2019 IL App (1st) 152760, ¶ 12. After the defendant was convicted, he appealed,

arguing that remand for a new *Batson* inquiry was required because the trial court erroneously

"collapsed the *Batson* proceedings into a single step" by soliciting the State's explanations for its

strikes "before it determined whether defendant made a *prima facie* case." *Gonzalez*, 2019 IL

App (1st) 152760, ¶ 64. The defendant also argued that the court erred when it ruled that there

was no *prima facie* showing and no *Batson* violation without allowing him to respond to the

State's explanations. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 64.

¶ 21        However, the appellate court explained that, where the trial court does not

determine whether a defendant made a *prima facie* showing, the State offers an explanation for

its peremptory challenge, and the court rules on the ultimate question of intentional

discrimination, the issue of whether the defendant made a *prima facie* showing becomes moot.

*Gonzalez*, 2019 IL App (1st) 152760, ¶ 67. The appellate court concluded that, because the trial court determined that the State provided adequate gender-neutral reasons and there was no basis for a *Batson* challenge, the issue of a *prima facie* showing was moot, such that the appellate court "need not determine whether [the] defendant made a *prima facie* showing under *Batson*." *Gonzalez*, 2019 IL App (1st) 152760, ¶ 69. Instead, the court explained that it must determine only whether the trial court's finding that the State's explanations were neutral and valid was clearly erroneous. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 69. The court held that the trial court's finding was not clearly erroneous, as case law supported each of the State's reasons as being a neutral, valid reason for excluding a potential juror. *Gonzalez*, 2019 IL App (1st) 152760, ¶¶ 70-72. Accordingly, the court rejected the defendant's argument that the trial court erred in conducting its *Batson* inquiry. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 73.

¶ 22        Like *Gonzalez*, after the trial court asked defendant's counsel if there was any objection to the State's peremptory challenges to Juror 50 and Juror 18, counsel responded that he objected. Defense counsel argued that "the only two blacks on this jury *** have been excused by the State *** leaving an all white jury and a black defendant." The court then asked the State to respond. The prosecutor explained that he had concerns with Juror 50 because of her knowledge of Blackwell and Washington and because of her criminal contacts. The prosecutor further stated that he was concerned that Juror 18's knowledge of the witnesses, including the fact that she had dated Blackwell's brother, could affect her deliberations in the case. The court gave defendant's counsel the opportunity to respond, and counsel asserted that both jurors noted that they could be fair. Thereafter, the court found that the prosecutor's reasons were "race neutral explanations as to why [Juror 50 and Juror 18] should be *** excused by a peremptory challenge," and therefore, there was no basis for a challenge under *Batson*. Because the trial

court ruled on the ultimate issue of intentional discrimination, whether defendant established a *prima facie* case of discrimination is now moot. *Gonzalez*, 2019 IL App (1st) 152760, ¶ 69. Accordingly, we reject defendant's arguments that the trial court (1) deprived him of an opportunity to establish a *prima facie* case by collapsing the separate *Batson* steps and (2) improperly found that he had not established a *prima facie* case of discrimination.

¶ 23    We further note that, to the extent defendant argues that the trial court's *Batson* inquiry caused the record to be incomplete due to a "muddled and incomplete" discussion of the relevant *prima facie* factors, that argument also fails. Beyond the fact that *any* error in the trial court's finding on a *prima facie* showing of a *Batson* violation is generally rendered moot after a trial court makes a finding that no purposeful discrimination has occurred (*People v. Austin*, 2017 IL App (1st) 142737, ¶ 41), it was defendant's burden to establish a *prima facie* case, and that burden could not be transferred from defendant to the trial court (*People v. Sanders*, 2015 IL App (4th) 130881, ¶¶ 33, 36). The record indicates that, after defendant's counsel raised his *Batson* objection, he was given a full opportunity to establish a *prima facie* case. Counsel was not interrupted or prohibited from making his arguments, and we determine that the record contains the extent of the evidence counsel sought to offer. See *Sanders*, 2015 IL App (4th) 130881, ¶¶ 30-32 (stating defendant's claim that he could have established *prima facie* case of discrimination if the trial court had given him the opportunity failed where record showed defendant was permitted to make argument, and he was not interrupted or prevented from presenting all arguments he wished to make).

¶ 24    Thus, we need only determine whether the court's finding that the State's explanations for striking Juror 50 and Juror 18 were race-neutral and valid was clearly erroneous. *Kitchen*, 159 Ill. 2d at 18; *Gonzalez*, 2019 IL App (1st) 152760, ¶ 69; *Payne*, 2015 IL App (2d)

120856, ¶¶ 47, 55. A finding is clearly erroneous only where the entire record leaves the reviewing court with the definite and firm conviction that a mistake has been made. *People v. Shaw*, 2016 IL App (4th) 150444, ¶ 46.

¶ 25    The State provided two principal reasons for excluding Juror 50 and Juror 18, and defendant makes no argument that either reason was pretextual. The State's first reason was that Juror 50 had "criminal contacts with the police" relating to "multiple ordinance violations" for fighting and stealing. The prosecutor explained that no other jurors had such criminal contacts and, if they did, he would have excluded them as well. The trial court correctly determined that the State gave a valid, race-neutral reason for excluding Juror 50 because "the existence of a criminal history is a race-neutral reason for excluding a prospective juror." *Payne*, 2015 IL App (2d) 120856, ¶ 48.

¶ 26    The State's second reason was that both Juror 50 and Juror 18 knew Blackwell and Washington, and in fact, Juror 18 had dated Blackwell's brother. The prosecutor explained that he was concerned that the jurors' knowledge of Blackwell and Washington would "play[ ] a role" during deliberations, beyond the evidence presented in the case. The trial court correctly determined that Juror 50's and Juror 18's knowledge of Washington and Blackwell was a valid, race-neutral reason for excluding them. The State's concerns regarding a juror's "acquaintance with *** potential witnesses constitute legitimate, race-neutral reasons for exercising a peremptory challenge." *People v. Britt*, 265 Ill. App. 3d 129, 138 (1994).

¶ 27    Accordingly, we hold that the trial court's finding that the State gave valid, race-neutral reasons for excluding Juror 50 and Juror 18, such that defendant's *Batson* challenge failed, was not clearly erroneous.

¶ 28                                III. CONCLUSION

- 11 -

¶ 29       For the reasons stated, we affirm the trial court's judgment.

¶ 30       Affirmed.