2023 IL App (4th) 221013

NO. 4-22-1013

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 28, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| MARQUIESE TALLEY, | ) | No. 20CF426 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice DeArmond and Justice Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Marquiese Talley, was convicted of aggravated criminal sexual assault and armed robbery and sentenced to consecutive terms of 45 years and 35 years in prison. Defendant appeals, arguing this court should remand for a new *Batson* hearing (*Batson v. Kentucky*, 476 U.S. 79, 89 (1986)) because the procedures used during the initial *Batson* hearing were inadequate and resulted in an insufficient record to review the merits of his *Batson* challenge. For the reasons that follow, we affirm.

¶ 2                    I. BACKGROUND

¶ 3                    A. Indictment

¶ 4    In August 2020, a grand jury returned an indictment charging defendant with, *inter alia*, aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(8) (West 2020)) (count I),

armed robbery (*id.* § 18-2(a)(2)) (count II), and criminal sexual assault (*id.* § 11-1.20(a)(1)) (count III).

¶ 5                                              B. Jury Trial

¶ 6              In November 2021, the case proceeded to trial. During jury selection, James Hodges, an African American man who was a police officer with the Peoria Police Department, indicated he knew all of the police officers and technicians who were listed as potential witnesses. When asked whether this knowledge would impact his ability to be fair, Hodges stated, "I work with them, so I don't think so." Hodges, on further inquiry, confirmed he could be a fair and impartial juror. Hodges further indicated he was familiar with the "protocols" his fellow officers follow and had previous experience with cases involving victims of sexual assault. Hodges stated he would not necessarily believe his fellow officers over another witness, but rather, he would "go by the *** evidence and the facts of the case." Based upon this information, defense counsel challenged Hodges for cause, a challenge which the trial court rejected upon objection of the State.

¶ 7              Later, when a panel of potential jurors that included Hodges was tendered to the State, the State used a peremptory challenge to strike him. Defense counsel asked to be heard on the matter. After a sidebar conference off the record and the removal of the potential jurors from the courtroom, the following exchange occurred:

> "THE COURT: But would you like to address your concern now?
>
> [DEFENSE COUNSEL]: Sure, Judge. Judge, Mr. Hodges is the only—I think one of two black individuals on the jury. He's the only black male on the jury, I believe. We had discussed the issue with respect to him being a police officer in the back. There was—

[the State] actually objected to a challenge for cause. He has indicated no reason in the world why he couldn't be a fair and impartial juror, and yet [the State] has struck him. I would like to hear a race-neutral reason, under *Batson*, why.

[THE STATE]: Well, Your Honor, respectfully, just because counsel—I have no obligation to tell him anything. I have a right to do a *prima facie* peremptory. I don't owe him any explanation. If the Court, however, would want an explanation, that would be a different reason, which I can articulate, Judge.

THE COURT: First of all, there's one African American; is that what I'm supposed to say? The other one was Filipino, I think. So [the] State just removed the only African American in the jury pool. That African American raised his hand, wanted to come back there, and told us stuff. I mean, he's a police officer and he knows all the police officers. He knows a lot of the hospital workers.

And there's certainly not a pattern. I can't think of the phrase, but I know it's already been decided that one cannot form a pattern. One removal, by definition, cannot be a pattern of—now—the words are escaping me now. Pattern of what? But for *Batson* purposes.

In the interest of cleanliness, [the] State—and I agree with [the] State, they—that they're not required to give a reason. You get peremptories. You get to do it. You don't like—you don't like the

way—I don't know what. I mean, it could be oddball reasons. None of my business. In [the] interest of cleanliness, would you like to volunteer whatever your reason was?

[THE STATE]: Yes, Judge.

THE COURT: Okay.

[THE STATE]: Officer Hodges is a police officer with Peoria Police Department. He's indicated that he knows all of the officers. He knows, I believe, the analyst also from the Springfield laboratory. As I was thinking about the statements that he made in the Court's chamber in front of counsel and I, it—it appears to me that I—I did not want to put him in the position of being on a jury of this seriousness, knowing certainly that if the defendant's convicted this would be a ready-made reason for our Appellate Court to perhaps use it as a reason that the person should have been excused. So I didn't want to be in that position.

It has nothing to do with Officer Hodges' race. He is a fine officer. I know Officer Hodges. And I just felt, all things considered, that it would be best that I relieve him of being in that position while he's an active duty police officer.

THE COURT: All right. One person needs to be satisfied, and it's me, and I'm satisfied. So. I hope [defense counsel] is, too, but anyway, a satisfactory reason was given and none—none was required. But anyway, that is something an—an Appellate Court

could, of course, look at if—if there will be one in this case. Before we stop, then—and that's the end of that issue. Or did you want anything else, Mr.—

[DEFENSE COUNSEL]: No, that's the end of the issue.

THE COURT: All right. That's the end of that issue."

¶ 8     At the conclusion of the trial, the jury found defendant guilty of the charges set forth in counts I through III of the indictment.

¶ 9                                C. Sentencing

¶ 10     In March 2022, the trial court, after merging the findings of guilt on the sexual assault charges, sentenced defendant to consecutive terms of 45 years and 35 years in prison.

¶ 11     This appeal followed.

¶ 12                                II. ANALYSIS

¶ 13     On appeal, defendant argues this court should remand for a new *Batson* hearing because the procedures used during the initial *Batson* hearing were inadequate and resulted in an insufficient record to review the merits of his *Batson* challenge. The State disagrees.

¶ 14                          A. Unpreserved Error

¶ 15     Defendant acknowledges he has failed to preserve the alleged error for review but asks it to be considered as second-prong plain error. See *People v. Belknap*, 2014 IL 117094, ¶ 66, 23 N.E.3d 325 ("To preserve an alleged error for review, a defendant must both make an objection at trial and include the issue in a posttrial motion."). Under the plain-error doctrine, a reviewing court may consider an unpreserved error

"when a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant (first-

prong plain error) or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process (second-prong plain error)." *People v. Schoonover*, 2021 IL 124832, ¶ 27, 190 N.E.3d 802.

Our first step under the plain-error doctrine is to determine whether a clear or obvious error occurred. *People v. Jackson*, 2022 IL 127256, ¶ 21, 211 N.E.3d 414.

¶ 16                                    B. Standard of Review

¶ 17         The parties disagree as to the appropriate standard of review to be applied to the issue presented in this case. Defendant asserts we should apply the *de novo* standard of review because the issue presented is one of law. The State disagrees, asserting we should apply the clearly erroneous standard of review based upon precedent from this court.

¶ 18         We initially reject the State's assertion that this court has previously applied the clearly erroneous standard of review to an issue similar to the one currently before this court. *People v. Sanders*, 2015 IL App (4th) 130881, 34 N.E.3d 219, upon which the State relies, does not support the State's assertion. In fact, absent from *Sanders* is any reference to the clearly erroneous standard of review.

¶ 19         Illinois case law is, as the State notes, replete with cases referencing the clearly erroneous standard of review when addressing *Batson* claims. However, the actual application of that standard of review has occurred when the issue concerned the trial court's ultimate determination on the *Batson* claim. See, *e.g.*, *People v. Harris*, 206 Ill. 2d 1, 25, 794 N.E.2d 314, 330 (2002); *People v. Davis*, 233 Ill. 2d 244, 261-62, 909 N.E.2d 766, 775-76 (2009). In this case, the trial court's ultimate determination on the *Batson* claim is not at issue. Indeed, defendant makes clear in his reply brief he is not challenging the court's ultimate determination: "[T]he State misconstrues [defendant's] *procedural* arguments as a *substantive* argument about the underlying

merits of the *Batson* objection." (Emphases in original.).

¶ 20    To determine the appropriate standard of review to be applied to the issue presented in this case, we must consider the nature of the issue or question presented. We do so by examining the specific argument and contentions raised by defendant.

¶ 21    Again, defendant argues the procedures used during the initial *Batson* hearing were inadequate and resulted in an insufficient record to review the merits of his *Batson* challenge. Defendant contends the trial court erroneously collapsed and skipped steps of the *Batson* procedure and failed to make any "express" ruling, including whether he made a *prima facie* showing of discrimination. Defendant further contends the court improperly required him to show a pattern of exclusion to establish a *prima facie* showing of discrimination and erroneously believed a party can use a preemptory challenge for any reason without explanation.

¶ 22    Based upon our examination of the argument and contentions raised by defendant, we find the nature of the issue or question presented is, as defendant asserts, one of law. It concerns the adequacy of the procedures used by the trial court when considering defendant's *Batson* challenge. It is well-established that questions of law are subject to *de novo* review. *People v. Caballes*, 221 Ill. 2d 282, 289, 851 N.E.2d 26, 31 (2006).

¶ 23    An application of the *de novo* standard of review to the issue presented in this case would be consistent with federal case law—case law cited by defendant—finding *de novo* review was appropriate where the defendant claimed the trial court "failed to appropriately conduct the *Batson* inquiry." *United States v. McMath*, 559 F.3d 657, 663 (7th Cir. 2009). The State nevertheless asserts *McMath* should not be followed because it created a novel "preliminary step" in determining the applicable standard of review by asking the question of whether the defendant has "overstated" a claim of error. See *id.* at 663 n.2 (acknowledging the court had previously

- 7 -

declined a defendant's invitation to apply *de novo* review where it found the defendant's claims of legal error to be overstated). *McMath* did not, however, create a novel preliminary step. To the contrary, a reviewing court's careful consideration of the nature of the issue or question presented has always been necessary to determining the appropriate standard of review; a reviewing court does not simply rely upon a party's characterization of the issue or question presented.

¶ 24 Accordingly, we find it appropriate to apply the *de novo* standard of review to the issue presented in this case. That is, we will consider, without deference to the trial court, whether defendant has shown the procedures used by the court when considering his *Batson* challenge were inadequate.

¶ 25 C. *Batson* Procedure

¶ 26 In *Batson*, 476 U.S. at 89, the United States Supreme Court held the equal protection clause of the fourteenth amendment (U.S. Const., amend. XIV, § 1) prohibits the State from using peremptory challenges to strike potential jurors solely on the basis of their race. The Supreme Court established a three-step process for determining whether the State used its peremptory challenges to remove potential jurors due to their race. *Batson*, 476 U.S. at 96-98. Since the *Batson* decision in 1986, our courts have had occasion to set forth the process for evaluating a *Batson* challenge. See, *e.g.*, *People v. Davis*, 231 Ill. 2d 349, 360-64, 899 N.E.2d 238, 245-47 (2008); *People v. Shaw*, 2014 IL App (4th) 121157, ¶¶ 16-20, 21 N.E.3d 802.

¶ 27 Under the first step, a defendant "must make a *prima facie* showing that the [State] has exercised [a] peremptory challenge[ ] on the basis of race." *Davis*, 231 Ill. 2d at 360. A defendant does so by producing sufficient evidence for the trial court " 'to draw an inference that discrimination has occurred.' " *Id.* (quoting *Johnson v. California*, 545 U.S. 162, 170 (2005)). When determining whether the requisite showing has been made, the court "must consider 'the

- 8 -

totality of the relevant facts' and 'all relevant circumstances' surrounding the peremptory strike to see if they give rise to a discriminatory purpose." *Id.* (quoting *Batson*, 476 U.S. at 94, 96-97). Our courts have specifically found that the following factors should be considered:

> " '(1) racial identity between the [party exercising the peremptory challenge] and the excluded venirepersons; (2) a pattern of strikes against African-American venirepersons; (3) a disproportionate use of peremptory challenges against African-American venirepersons; (4) the level of African-American representation in the venire as compared to the jury; (5) the [State's] questions and statements [of the challenging party] during *voir dire* examination and while exercising peremptory challenges; (6) whether the excluded African-American venirepersons were a heterogenous group sharing race as their only common characteristic; and (7) the race of the defendant, victim, and witnesses.' " *People v. Rivera*, 221 Ill. 2d 481, 501, 852 N.E.2d 771, 783-84 (2006) (quoting *People v. Williams*, 173 Ill. 2d 48, 71, 670 N.E.2d 638, 650 (1996)).

In addition to these factors, a comparative juror analysis—an analysis which examines the State's questions to prospective jurors and the juror's responses—is another factor to be considered. *Davis*, 231 Ill. 2d at 361-62. If the court determines a defendant has made the requisite showing, the process moves to the second step. *Id.* at 362-63.

¶ 28 Under the second step, the State must articulate a race-neutral reason for exercising the preemptory challenge to strike the prospective juror. *Harris*, 206 Ill. 2d at 17. A race-neutral explanation is one based upon something other than the juror's race. *Id.* After the State gives a

race-neutral reason for striking the juror, the defendant "may then rebut the proffered explanation as pretextual." *Davis*, 231 Ill. 2d at 363. So long as the State articulates race-neutral reasons for striking the prospective juror, the process moves to the third step.

¶ 29    Under the third and final step, "the trial court must determine whether the defendant has shown purposeful discrimination in light of the parties' submissions." *Id.* "The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.*

¶ 30    D. The Trial Court's Application of the *Batson* Procedure

¶ 31    In this case, the trial court conducted a sidebar conference after defense counsel asked to be heard on the State's use of a preemptory challenge to strike Hodges. The record, we note, contains no indication as to the substance of the discussion during the sidebar conference. See *Sanders*, 2015 IL App (4th) 130881, ¶ 41 (stating the party making the *Batson* challenge is "responsible for preserving the record, and any ambiguities must be construed against him"). The court then gave defense counsel the opportunity to address his concern after removing the prospective jurors from the courtroom.

¶ 32    On the record, defense counsel asserted a *Batson* challenge. Counsel articulated three grounds for the challenge: (1) Hodges was "the only black male on the jury," (2) the State objected to the challenge of Hodges for cause, and (3) Hodges indicated he could be a fair and impartial juror.

¶ 33    After articulating the grounds for the *Batson* challenge, defense counsel attempted to advance the process to the second step of the *Batson* proceeding without a finding by the trial court concerning a *prima facie* showing of discrimination. Specifically, counsel invited the State to provide "a race-neutral reason, under *Batson*, why." At that point, the State asserted it had no

obligation to tell counsel the reason for its strike—there had been no finding of a *prima facie* showing of discrimination. The State rejected counsel's invitation to provide race-neutral reason for its use of a preemptory challenge to strike Hodges.

¶ 34 The trial court, after hearing defense counsel's *Batson* challenge and the grounds therefore as well as the State's assertion that it was under no obligation to provide a race-neutral reason for its strike, addressed, "[f]irst of all," the grounds articulated for the *Batson* challenge. Specifically, the court acknowledged the State "removed the only African American in the jury pool" and there had been prior discussion involving Hodges. Additionally, the court addressed whether there had been a pattern:

> "And there's certainly not a pattern. I can't think of the phrase, but I know it's already been decided that one cannot form a pattern. One removal, by definition, cannot be a pattern of—now— the words are escaping me now. Pattern of what? But for *Batson* purposes."

The court concluded, after its review, it "agree[d] with [the] State, they—that they're not required to give a reason."

¶ 35 After agreeing with the State, the trial court asked the State it if would "volunteer" its reason for the strike "[i]n the interest of cleanliness." The State complied and provided its reason for the strike.

¶ 36 The trial court, after hearing the State's reason for the strike, found it to be "a satisfactory reason." In so finding, the court again noted the State was not required to give a reason. Before concluding on the issue, the court allowed defense counsel to add "anything else," to which counsel responded, "No, that's the end of the issue." The court concluded, "All right. That's the

end of that issue."

¶ 37        At the outset, we reject defendant's contention on appeal that the trial court required him to show a pattern of exclusion to establish a *prima facie* showing of discrimination, finding it is not supported by the record. After addressing the grounds articulated by defense counsel for the *Batson* challenge, the court addressed whether there had been a pattern of strikes. Contrary to defendant's assertion, the court's comments do not show an erroneous belief "that one removal could not constitute discrimination for *Batson* purposes." Instead, the court's comments show it considered an additional factor not addressed by defense counsel. See *Rivera*, 221 Ill. 2d at 501 (noting a factor for the court's consideration is whether there had been " 'a pattern of strikes against African-American venirepersons' "). We note *Shaw*, 2014 IL App (4th) 121157, ¶¶ 24-25, upon which defendant relies, is factually distinguishable, in that the trial court there made a single finding " 'the Defendant has not established a pattern under *Batson*' " after the State had argued there " 'has to be a pattern.' " See also *People v. Trejo*, 2022 IL App (2d) 190424-B, ¶ 13 (finding the trial court's remarks there " 'has to be a pattern' " and " '[i]t has to be systematic' " appeared to "betray the *** court's fundamental misconception about what must be shown under *Batson*" (emphases omitted)).

¶ 38        We also reject defendant's contention that the trial court erroneously believed a party can use a preemptory challenge for any reason without explanation, finding it is not supported by the record. After defense counsel raised a *Batson* challenge to the State's use of a peremptory challenge to strike Hodges, the court did not simply reject the challenge. Rather, the court advanced the challenge through a specific process for evaluation. When doing so, the court correctly stated the State was not required to offer a reason for its preemptory challenge after it found, as discussed below, defendant had not made a *prima facie* showing of discrimination. See *Rivera*, 221 Ill. 2d at

501-02 ("The party attempting to exercise a peremptory challenge is not required to provide race-neutral reasons for the exercise of its peremptory challenge if a *prima facie* case of purposeful racial discrimination has not been demonstrated.").

¶ 39        We now turn to defendant's contentions that the trial court erroneously collapsed and skipped steps of the *Batson* procedure and failed to make any "express" finding, including whether he made a *prima facie* showing of discrimination.

¶ 40        Defendant correctly points out the trial court did not make "express" findings concerning whether he made a *prima facie* showing of discrimination or whether he had established a showing of discrimination. However, a review of the proceedings makes clear the requisite findings were made, even if the precise language was not used. Specifically, it shows the court found defendant had not made a *prima facie* showing of discrimination, and even if he had, the State's race-neutral reason for the strike was credible and persuasive and, therefore, defendant had not made a showing of discrimination.

¶ 41        In support of his contention that the trial court erroneously collapsed and skipped steps of the *Batson* procedure, defendant initially asserts the court improperly considered race-neutral reasons at the first stage. We disagree. In articulating the grounds for the *Batson* challenge, defense counsel acknowledged the prior discussion concerning Hodges and "him being a police officer." The court then, when addressing the grounds for the *Batson* challenge, acknowledged the prior discussion concerning Hodges and the information he provided. Given the exchange, we are not convinced the court improperly considered race-neutral reasons at the first stage. Indeed, at that point, the State had not even been called upon to provide a race-neutral reason for its use of the preemptory challenge to strike Hodges.

¶ 42        Defendant also asserts the trial court failed to consider all necessary factors at the

first stage. We disagree. The court addressed the grounds articulated by defense counsel for the *Batson* challenge. In addition, the court addressed whether there had been a pattern of strikes, a factor not addressed by counsel. Although the court did not explicitly address the other factors, we are not convinced the court failed to consider them. See *People v. Howery*, 178 Ill. 2d 1, 32, 687 N.E.2d 836, 851 (1997) ("[T]he trial court is presumed to know the law and apply it properly."); *Sanders*, 2015 IL App (4th) 130881, ¶ 41 (declining to conclude the trial court erred because it did not *sua sponte* address other factors not raised by the defendant).

¶ 43    Last, defendant asserts the trial court failed to allow him the opportunity to rebut the race-neutral reason for the strike articulated by the State. We disagree. Initially, defendant has provided no authority to support his position that the court was *required* to allow him an opportunity to rebut the reason articulated by the State. See *People v. Crawford*, 2013 IL App (1st) 100310, ¶¶ 106-07, 2 N.E.3d 1143 (rejecting the defendant's claim that he had a " 'right' " to rebut the State's proffered race-neutral reason). Moreover, the court did, in fact, allow defense counsel to add "anything else," which counsel declined. We, having found defendant's assertions are without merit, reject his contention that the court erroneously collapsed and skipped steps of the *Batson* procedure.

¶ 44    In sum, defendant has not shown the procedures used by the trial court when considering his *Batson* challenge were inadequate. Absent any error, we need not proceed further in our analysis under the plain-error doctrine.

¶ 45    We emphasize, while defendant has not established any error, the *Batson* hearing conducted in this case should not serve as a model for future *Batson* hearings. Instead, when a *Batson* challenge is asserted, the prudent course would be for all interested parties to pause and ensure a hearing is conducted where the challenge is methodically advanced through the necessary

steps, with all findings being set forth on the record. We encourage a review of our prior decision in *Shaw*, 2014 IL App (4th) 121157, ¶¶ 32-35, which set forth a step-by-step approach to conducting a *Batson* hearing.

¶ 46                                    III. CONCLUSION

¶ 47          For the reasons stated, we affirm the trial court's judgment.

¶ 48          Affirmed.

*People v. Talley*, 2023 IL App (4th) 221013

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 20-CF-426; the Hon. John P. Vespa, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Drew A. Wallenstein, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jodi M. Hoos, State's Attorney, of Peoria (Patrick Delfino, Edward R. Psenicka, Ivan O. Taylor Jr., and Lawrence M. Bauer, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |